**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
MIGUEL ANGEL MORALES,            :
     [#65643-004]                :   Civil Action No. 10-150 (JBS)
                                 :
               Petitioner,       :
                                 :
          v.                     :   OPINION
                                 :
DONNA ZICKEFOOSE, et al.,        :
                                 :
               Respondents.      :
```

**APPEARANCES:**

```
Miguel Angel Morales              Paul J. Fishman,
     #65643-004                   United States Attorney
F.C.I. Fort Dix                   By:  Mark Christopher Orlowski
P.O. Box 38                            Assistant U.S. Attorney
Fort Dix, NJ  08640               OFFICE OF THE UNITED STATES ATTORNEY
     Petitioner pro se            401 East State Street, Room 430
                                  Trenton, NJ 08608
                                       Attorney for Respondent
```

**SIMANDLE**, District Judge:

Petitioner Miguel Angel Morales, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241,[1] challenging the results of a prison disciplinary proceeding.

---

[1] United States Code Title 28, Section 2241, provides in pertinent part:
   (a) Writs of habeas corpus may be granted by the ... district courts ... within their respective jurisdictions ...
   (c) The writ of habeas corpus shall not extend to a prisoner unless- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

For the reasons set forth below, the Petition will be denied.

## I. BACKGROUND

Petitioner is a federal prisoner serving a sentence of 135-months' imprisonment imposed upon his conviction of various drug and firearms offenses.  See United States v. Morales, Crim. No. 05-20791 (S.D. Fla.).  His projected release date is August 27, 2005.

On February 13, 2009, Petitioner was selected to provide a urine sample for drug testing.  Petitioner was given a two-hour period of time in which to provide the sample, during which time he was subjected to visual observation by a correctional officer of the same gender.  There is no dispute that Petitioner did not provide the urine sample as directed.

On the same date, Petitioner was issued Incident Report Number 1832920 for Refusing to Provide a Urine Sample, Code 110.  The incident report described the violation as follows:

> On Friday February 13, 2009 at 9:30AM inmate Morales, Miguel #65643-004 was asked to provide a urine sample. He was given the two hours, at that point inmate Morales was not able to provide a urine sample.  Health services staff was contacted and was informed by medical records tech Ms. Quinto that there is nothing in his records that specify he is unable to provide urine sample.

(Incident Report Number 1832920, ¶ 11.)

The Incident Report was delivered to Petitioner on the same date. Petitioner was read his rights, and he declined to make a statement at that time.

On February 17, 2009, an initial hearing was held before the Unit Disciplinary Committee. At that hearing, Petitioner stated, "I could not use the bathroom. I was there for two hours. I do not use drugs." The Unit Disciplinary Committee then referred the Incident Report to the Discipline Hearing Officer, because of the severity of the offense.

At the DHO hearing on March 12, 2009, Petitioner was advised of his rights; he did not request a staff representative or any witnesses. Petitioner's statement to the DHO is summarized in the DHO Report as, "I could not provide. I told Respeto I could not go. I could not pee earlier in the unit two times." At the conclusion of the hearing, the DHO determined that Petitioner had committed the prohibited act of Code 110, based upon the Incident Report and Petitioner's admission that he did not provide a sample. He imposed sanctions including 30 days disciplinary segregation, another 30 days disciplinary segregation (suspended pending 180 days clear conduct), disallowance of 40 days good conduct time, 60 days loss of commissary privileges, 60 days loss of telephone privileges (suspended pending 180 days clear conduct), 12 months loss of visitation, and 12 months visitation

with immediate family members only.  The DHO explained the reasons for the sanctions as follows:

> The action on the part of an inmate to refuse to provide a urine specimen for drug screening creates an inability for the established drug screening policy to be successfully carried out.  The program provides the staff with the necessary means to provide a safe and secure environment for both inmates to live within and where the staff can work.  Inmates who refuse to participate in these tests must be held accountable at the same level as inmate who test positive.  Otherwise, inmates who know they will test positive could avoid or lessen the consequences by simply refusing the test.
>
> Disciplinary Segregation, Disallowance of Good Conduct Time, Loss of Privileges, are meant to demonstrate the seriousness of these offenses to you as well as everyone incarcerated at this facility.

(DHO Report, ¶ VII.)

Petitioner filed a timely BP-10 administrative remedy appeal to the Regional Director.  In the BP-10, Petitioner challenged the "immoral cruel and inhumane circumstances" to which he had been subjected, specifically, the circumstances of having to provide a urine sample while being subjected to visual observation and within a two-hour window.  The appeal was denied.

> You appeal the March 12, 2009, decision of the Discipline Hearing Officer (DHO) at FCI Fort Dix, finding you committed the prohibited act of Refusing to Provide a Urine Sample, Code 110, Incident Report No. 1832920.  You claim it is cruel and unusual punishment to afford you only two hours to provide a urine sample while staff watches you and stares at your private parts.  Once you were placed in the Special Housing Unit, you were able to urinate without staff watching you.  You seek to have the incident report expunged.
>
> In your appeal, you do not deny failing to provide a urine sample on February 13, 2009. ...  Program

4

> Statement 6060.08, Urine Surveillance and Narcotic Identification states, if an inmate is unable to provide a urine sample within two hours, there is a presumption the inmate is unwilling to provide it. Based on the evidence presented, the DHO determined you did not adequately rebut the presumption and reasonably found you committed the prohibited act. ...
>
> Program Statement 6060.08 also states staff shall directly supervise the giving of the urine sample.  To eliminate the possibility of diluted or adulterated samples, staff shall keep the inmate under direct visual supervision during this two-hour period, or until a complete sample is furnished.
>
> The record in this case reflects substantial compliance with Program Statement 5270.07, Inmate Discipline. ... Accordingly, your appeal is denied.

(Appeal No. 533108-R2, Response of Regional Director.)

Petitioner filed a timely appeal with the Central Office, in which he again challenged the circumstances surrounding the provision of the urine sample.

> The question presented to the regional director is not whether I denied not providing a urine sample.  The question is should an inmate have to be subject to a c/o standing right beside him looking at his penis.  It is not natural for a man to be placed under such strain psychologically.  Having to urinate while another man watches.

(BP-11, Central Office Administrative Remedy Appeal.)  Again, the appeal was denied.

> You contend you did not refuse to provide the urine specimen but, rather, were unable to do so under direct visual supervision. ...  You were given two hours to provide the urine specimen and were given eight ounces of water.  At the end of this period, you had not yet provided the urine specimen.  Given this, an incident report was warranted.  Program Statement 6060.08 further provides "To eliminate the possibility of diluted or adulterated samples, staff shall keep the

5

>   inmate under direct visual supervision during this two-
>   hour period, or until a complete sample is furnished."
>   Direct visual supervision is required.

(Administrative Remedy Number 533108-A1, Response of Administrator, National Inmate Appeals.)

Here, in a rather rambling, narrative Petition, Petitioner asserts that the discipline imposed violated his right to equal protection, in that the appeal of another inmate who was charged with approximately the same violation, at approximately the same time, and who allegedly challenged the sanctions on the same grounds as Petitioner, resulted in a remand for rehearing.[2]

---

[2] Examples of Petitioner's characterization of his claim include the following allegations:

>   (3) The question before this Court is, how can two
>   inmates with the same charge of refusing to provide a
>   urine sample be treated so differently?  Both asserted
>   in the BP-10 appeals that they just could not go, due
>   to the pressure of another male.  A Correctional
>   Officer standing right beside them, staring at their
>   penis.  Both inmates similarly situated with such
>   different outcomes. ...
>
>   ... Equal protection is called into quest[ion] also.
>   ...
>
>      When looked at closely, it is determinative that
>   Morales similarly situated as Herrera-Obana, was
>   intentionally treated differently by the Regional
>   Director and the Central Office Administrative Remedy
>   Coordinator Harrell Watts, Administrator. ...  There is
>   no rational relation between the dissimilar treatment
>   and any legitimate penal interest. ...
>
>   ... Herrera-Obano received the relief requested.  The
>   instant Petitioner Morales deserves the same type of
>   relief.  Morales was and is similarly situated. ...

Respondents have answered, asserting that the Petition is subject to dismissal without prejudice because Petitioner failed to exhaust his administrative remedies with respect to this equal protection claim.  Petitioner did not file a reply in support of the Petition.  This matter is now ready for decision.

## II.   LEGAL STANDARD

"Habeas corpus petitions must meet heightened pleading requirements."  McFarland v. Scott, 512 U.S. 849, 856 (1994).  A petition must "specify all the grounds for relief" and must set forth "facts supporting each of the grounds thus specified."  See Rule 2(c) of the Rules Governing § 2254 Cases in the U.S. District Courts (amended Dec. 1, 2004) ("Habeas Rules"), made applicable to § 2241 petitions through Rule 1(b) of the Habeas Rules.

Nevertheless, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting

---

> (8) The Petitioner avers that this case is probably a case of first impression for the Third Circuit.  The dissimilar treatment where there is no rational relation is an abuse of discretion.  This treatment violates equal protection where two inmates are similarly situated.  Not only on the same charge, but in the exact same time frame.  With the exact same set of facts.

(Petition at 5-9.)

submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

### III.  ANALYSIS

A.  Jurisdiction

A habeas corpus petition is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement, Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973), including challenges to prison disciplinary proceedings that affect the length of confinement, such as deprivation of good time credits, Muhammad v. Close, 540 U.S. 749 (2004) and Edwards v. Balisok, 520 U.S. 641 (1997).  See also Wilkinson v. Dotson, 125 S.Ct. 1242 (2005).  Habeas corpus is an appropriate mechanism, also, for a federal prisoner to challenge the execution of his sentence.  See Coady v. Vaughn, 251 F.3d 480, 485-86 (3d Cir. 2001); Barden v. Keohane, 921 F.2d 476, 478-79 (3d Cir. 1990).  In addition, where a prisoner seeks a "quantum change" in the level of custody, for example, where a prisoner claims to be entitled to probation or bond or parole, habeas is the appropriate form of action.  See, e.g., Graham v. Broglin, 922 F.2d 379 (7th Cir. 1991) and cases cited therein.

As the sanctions imposed on Petitioner included the loss of good time credits, this Court has jurisdiction in habeas to review Petitioner's challenge to the disciplinary proceeding.

B.  Exhaustion of Administrative Remedies

Respondents ask this Court to dismiss the Petition for failure to exhaust administrative remedies.

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F.Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required

where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

In general, the BOP Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement."[3]  28 C.F.R. § 542.10.  An inmate must initially attempt to informally resolve the issue with institutional staff.  28 C.F.R. § 542.13(a).  If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted.  28 C.F.R. § 542.14.  An inmate who is dissatisfied with the Warden's response to his BP-9

---

[3] "This rule does not require the inmate to file under the Administrative Remedy Program before filing under statutorily-mandated procedures for tort claims (see 28 CFR 543, subpart C), Inmate Accident Compensation claims(28 CFR 301), and Freedom of Information Act or Privacy Act requests (28 CFR 513, subpart D),[ or other statutorily-mandated administrative procedures]." 67 F.R. 50804-01, 2002 WL 1789480 (August 6, 2002).

Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. 28 C.F.R. § 542.15(a).  The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response.[4]  <u>Id.</u>  Appeal to the General Counsel is the final administrative appeal.  <u>Id.</u>  If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level."  28 C.F.R. § 542.18.

Discipline Hearing Officer (DHO) appeals, as in this matter, are submitted directly to the Regional Director.  <u>See</u> 28 C.F.R. § 542.14(d)(2).  Therefore, DHO appeals involve fewer levels of review in order to be considered "exhausted."

Here, although Petitioner did appeal the sanctions imposed as a result of the DHO hearing, he did not assert the argument asserted here, that the sanction was imposed in violation of his rights to equal protection.  Petitioner has not presented this Court with any attempt to justify his failure to exhaust his administrative remedies.  Accordingly, this Court agrees that this Petition must be dismissed for failure to exhaust administrative remedies.

---

[4] Response times for each level of review are set forth in 28 C.F.R. § 542.18.

C. <u>Claim of Cruel and Unusual Punishment</u>

In the alternative, to the extent the Petition could be construed as asserting a claim that the BOP procedure for collecting urine specimens is "cruel and unusual" in violation of the Eighth Amendment,[5] and that the disciplinary sanctions are therefore unconstitutional, the claim asserted in the administrative appeals, that claim must be denied as meritless.

Here, by statute, Congress has vested in the Attorney General "the control and management of Federal penal and correctional institutions, ... who shall promulgate rules for the

---

[5] The Eighth Amendment to the United States Constitution prohibits the government from inflicting "cruel and unusual punishments" on those convicted of crimes. <u>Rhodes v. Chapman</u>, 452 U.S. 337, 344-46 (1981). This proscription against cruel and unusual punishments is violated by the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." <u>Helling v. McKinney</u>, 509 U.S. 25, 32 (1993). It is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." <u>Id.</u> at 31.

To state a claim under the Eighth Amendment, an inmate must allege both an objective and a subjective component. <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991). The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' ... are sufficiently grave to form the basis of an Eighth Amendment violation." <u>Helling v. McKinney</u>, 509 U.S. at 32 (quoting <u>Rhodes</u>, 452 U.S. at 346). This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992). The subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of harm. See <u>Farmer v. Brennan</u>, 511 U.S. 825, 835 (1994); <u>Wilson</u>, 501 U.S. at 303.

government thereof ... ." 18 U.S.C. § 4001. The regulations relating to the operation of federal correctional institutions include regulations for drug testing:

> The Warden shall establish programs of urine testing for drug use, to monitor specific groups or individual inmates who are considered as high risk for drug use, such as those involved in community activities, those with a history of drug use, and those inmates specifically suspected of drug use. Testing shall be performed with frequency determined by the Warden, on at least 50 percent of those inmates who are involved in community activities. In addition, staff shall randomly sample each institution's inmate population during each month to test for drug use.

28 C.F.R. § 550.30. In addition, 28 C.F.R. § 550.31(a) states, in pertinent part, "Staff of the same sex as the inmate tested shall directly supervise the giving of the urine sample. Further specifics regarding the drug testing programs are set forth in BOP Program Statement 6060.08, Urine Surveillance and Narcotic Identification.

The standards set forth in Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 674 U.S. 837 (1984), govern a court's review of an agency's regulations construing a statute.

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the courts, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation.

> Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

Chevron, 467 U.S. at 842-43 (footnotes omitted).  Even where the agency construction appears in an "interpretive" rule not subject to the "notice-and-comment" procedure of the Administrative Procedure Act, such as certain BOP Program Statements, the agency's interpretive rule is entitled to "some deference" where it is a permissible construction of the governing statute.  Reno v. Koray, 515 U.S. 50, 61 (1995).  See also Lopez v. Davis, 531 U.S. 230 (2001) ("In this familiar situation, where Congress has enacted a law that does not answer 'the precise question at issue,' all we must decide is whether the Bureau ... has filled the statutory gap 'in a way that is reasonable in light of the legislature's revealed design.'").

It surely cannot be contested that the Bureau of Prisons has a legitimate interest in ensuring that both the inmates entrusted to its care and supervision, as well as the staff that work in prison environments, are living and functioning in a drug-free environment.  Obtaining accurate drug testing results from inmates is essential to that goal.  The requirement that prisoners be subjected to drug testing, including random testing, supervised by a correctional officer of the same sex, does not subject such prisoners to any "extreme deprivation" of the sort prohibited by the Eighth Amendment.  To the contrary, the drug

14

testing program is designed to promote a safe environment for prisoners while promoting accurate and reliable testing results. This claim is meritless.

## IV. CONCLUSION

For the reasons set forth above, the Petition will be dismissed for failure to exhaust administrative remedies as to the new equal protection claim or, in the alternative, denied on the merits of Petitioner's claim that the testing regime and discipline violated his Eighth Amendment rights.

                                           **s/ Jerome B. Simandle**
                                           Jerome B. Simandle
                                           United States District Judge

Dated: **February 3, 2011**